MORALES ET AL. *v.* LANDRAU ET AL.

APPEAL from the District Court of San Juan.

No. 308.—Decided December 18, 1909.

EJECTMENT—TITLE TO ESTATE.—When title was acquired to a rural estate by a public deed in the year 1868, said estate will belong to the purchaser and to his successors in interest until it shall be shown that it has passed to other hands under a legitimate title of acquisition.

ID.—TITLE—FAILURE OF OWNER TO PAY TAXES.—When an estate has been acquired as above, it matters little that the owner and his estate have not appeared in the assessments of the territorial tax since the fiscal year of 1880-1881.

TESTIMONY IN POSSESSORY PROCEEDINGS AFFECTS PARTIES ONLY.—The testimony of witnesses given in proceedings to establish the possession of an estate as to the source of the title cannot prejudice persons who were not parties to the proceedings.

CONTRADICTORY EVIDENCE—CONCLUSION OF TRIAL COURT.—When the testimony of witnesses is contradictory it devolves upon the trial court to harmonize such testimony if possible or otherwise to decide and arrive at the conclusion which it may deem proper with judicial discretion and subjection to the rules of evidence.

INSCRIPTION OF POSSESSORY PROCEEDING IN REGISTRY—RIGHTS OF DIFFERENT PURCHASERS OF SAME PROPERTY NOT AFFECTED BY INSCRIPTION.—Article 392 of the Mortgage Law provides for the approval and record of possessory proceedings in the registry without prejudice to third persons having a better right, and where the same property has been sold to different purchasers and one of them has his possession recorded, he is not favored by section 1376 of the Civil Code, which provides that when the property has been sold to different purchasers, the ownership shall belong to the one who first recorded it in the registry.

POSSESSOR MUST PROVE HE HOLDS UNDER PROPER TITLE—ABSENCE OF SUCH TITLE SHOWS BAD FAITH.—It devolves upon the possessor of an estate to prove he holds possession under a proper title, the absence of which shows his bad faith.

POSSESSION, ALTHOUGH RECORDED, DOES NOT CONSTITUTE TITLE—CONVERTED INTO TITLE ONLY BY LAPSE OF TIME.—Proceedings to establish possession do not constitute a title of ownership, but merely of possession, which will become converted into a title of ownership by the lapse of time which the law fixes for prescription.

EVIDENCE—ADMISSION IN EVIDENCE OF DEEDS NOT RECORDED.—Public deeds, although not recorded in the registry, are properly admitted in evidence for the purpose of obtaining the annulment and cancellation of the record of the possession of the estate, being within the exception contained in the last paragraph of article 289 of the Mortgage Law.

TITLE BY PRESCRIPTION—TIME FOR.—Ownership and other property rights in real property shall prescribe by uninterrupted possession of the same for 30 years without the necessity of title or good faith.

EVIDENCE—DEATH CERTIFICATES OF TWO HEIRS ARE ADMISSIBLE TO EXPLAIN ORDER OF DECLARATION OF HEIRS.—Having been introduced in evidence, without objection, an order of declaration of heirs, death certificates of two of the heirs included in the order are properly admitted to explain the order and to show that those remaining are the only persons interested as plaintiffs in the litigation.

ID.—DECLARATION OF HEIRS NOT REQUIRED AS PROOF.—The plaintiffs having based their action, among other facts, on their capacity of heirs without such fact having been admitted by the defendants, they had the right to establish such capacity, without the necessity of having recourse therefore to the act relating to special proceedings.

ID.—DECLARATION OF HEIRS GENERALLY REQUIRED AS PROOF.—For general purposes or when it is sought to obtain a declaration of heirs, the mode and form established by the act of special proceedings must be observed.

EJECTMENT—INDEMNITY FOR PRODUCTS—FAILURE OF PROOF.—When the plaintiffs have not established the amount of the products of the estates, which is a necessary requisition for the indemnity claimed, it cannot be granted them.

The facts are stated in the opinion.

*Messrs. Cuevillas and Méndez* for appellant.

*Messrs. Manuel Moraza and Joseph Anderson* for respondent.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

On November, 19, 1907, Aurelio and Felícita Morales Oquendo and Justa Belén Oquendo filed a complaint in the District Court of San Juan against Eleuterio Landrau and Paula Cruz Arroyo, alleging the following as the fundamental facts of their action:

1. That Angel Oquendo y Salvachia died in this city without making any will, leaving as his only heirs two daughters named Juana and Justa, of whom the first died leaving four children, named Loreta, Petrona, Aurelio and Felícita.

2. That of the four children of Juana Oquendo, Loreta and Petrona died in an unmarried state, without leaving any ascending or descending succession, and consequently the only heirs of Angel Oquendo became Justa Belén Oquendo, in her own right as a daughter, and Aurelio and Felícita Morales Oquendo, in representation of Juana, their mother.

3. That Angel Oquendo y Salvachia left at his death, among other property, an estate consisting of 25 *cuerdas* planted in sugar-cane, coffee, and minor products, situated in the *barrio* of Los Frailes in the jurisdiction of Guaynabo, having the metes and bounds described in the complaint, which are the same set forth in a public deed of February 7, 1868, under which Angel Oquendo acquired the said estate from Manuel Díaz, the latter having acquired it in his turn by purchase from Cristina Manuela Regina, J. de la Cruz, J. Silverio, and Eugenio Carillo, by public deed of March 18, 1850.

4. That the said estate is at the present time bounded on the north by property belonging to Domingo Ramos; on the south and east by property of Zoilo Rivera; and on the west by property of Eleuterio Landrau.

5. That Eleuterio Landrau, without any title or right whatsoever, held the possession and enjoyed the estate in question until being divorced from his wife, Paula Cruz Arroyo, two years ago more or less, he turned it over to her in payment of her share of the ganancial property acquired during their marriage, Paula Cruz Arroyo holding the possession and enjoying the estate from the time it was delivered to her, in the manner described.

6. That the plaintiffs have information to the effect that the defendant Eleuterio Landrau, for the purpose of preventing the estate from being identified some day, instituted proceedings in the municipal court of Río Piedras to establish possession, without the knowledge of the legitimate owners of the estate nor of the owners of the adjoining estates, because neither of them were summoned in said proceedings.

7. That the plaintiffs estimate the damages caused by the defendants at $2,000, and the income and interest thereon which they have failed to receive during the 16 years that the defendants have enjoyed the estate, at $7,246, said items making a total of $9,246.

The complaint closes with the prayer that judgment be rendered as follows:

1. That the plaintiffs are the only and legitimate owners of the estate in question, and that the deefndants restore them to the material possession thereof.

2. That the defendants pay the plaintiffs the sum of $9,246, as damages and for income with interest which they have failed to receive during 16 years.

3. That if the estate has been recorded in the registry of property by virtue of proceedings to establish possession,

such proceedings be declared void, as well as the record thereof, as to the estate of 25 *cuerdas* which it is sought to recover, an order to issue to the registrar to cancel the record.

4. That the defendants pay the costs and expenses of the proceedings.

Upon answering the complaint, Eleuterio Landrau admits as true the facts that two years ago, more or less, he secured a divorce from his wife, Paula Cruz Arroyo; but he denies that the estate in question was delivered to his said wife as ganancial property, and that any proceedings to establish the possession thereof had ever been instituted, although he has instituted a number of proceedings to establish possession, in the municipal court of Río Piedras, relating to other estates, in which proceedings the adjoining and previous owners had been cited, denying the other facts which serve as a basis for the complaint; and he further alleged that even accepting as true all of the facts, they do not constitute a cause of action, because the ownership of the real property claimed has prescribed in favor of the defendant in accordance with the provisions of article 1957 of the Spanish Civil Code, the judicial order of April 4, 1899, and section 1858 of the Revised Civil Code of Porto Rico.

The trial having been had, the San Juan court rendered judgment on May 29, 1908, readings as follows:

"On May 29, 1908, in open court, this case was called for trial in its order on the calendar and the plaintiffs appeared through their counsel, and the defendant, Eleuterio Landrau, in person and represented by counsel. The defendant, Paula Cruz, did not appear, but as her default had been entered it was decided to continue the trial in her absence.

"Both parties present made their allegations, presented their evidence, which was heard, made their oral arguments and subsequently filed in court, within the term granted for the purpose, briefs in support of their respective claims.

"And the court, having duly considered the allegations, the evidence, the arguments and the briefs, holds that the facts and the law are in favor of the plaintiffs, and consequently renders judgment with the following pronouncements:

"1. That it should declare, as it does declare, that the plaintiffs, Aurelio and Felícita Morales y Oquendo and Justa Belén Oquendo, the heirs of Angel Oquendo, are the owners of the following estate:

"A rural estate consisting of 25 *cuerdas* of land, situated in the *barrio* of Los Frailes, formerly in the jurisdiction of Guainabo and now in the municipal district of Río Piedras, bounded on the north by property belonging to Domingo Ramós, on the south and east by lands of Zolio Rivera, and on the west by lands of Eleuterio Landrau, now Paula Cruz.

"2. That the said estate being now in the possession of the defendant, Paula Cruz y Arroyo, the court should adjudge the latter, as she is adjudged, to restore said plaintiffs in the material possession thereof, without delay or evasion, within three days from the date this judgment becomes final.

"3. That it should declare, as it does declare, null and void the proceedings to establish the possession of the rural estate of 60 *cuerdas* situated in the *barrios* of Monacillo and Frailes of Río Piedras. bounded on the east by property belonging to Domingo Ramós and the estate of Marcos Santa, on the north by property belonging to Juana Mecheteler, on the west by property of Loreto Geigel and Carmelo Díaz and Aquilino Marín, and on the south by lands belonging to Eleuterio Landrau, which proceedings were instituted, prosecuted and decided in the municipal court of Río Piedras on March 26, 1904; and null and void the record thereof in the Registry of Property of San Juan, made in volume 113 of the ninth archive of Río Piedras, folio 83, estate 455, first record; both annulments only as to the 25 *cuerdas* of land described, belonging to the plaintiffs, which were included by the defendant, Landrau, within the estate of 60 *cuerdas* the description of which appears in this pronouncement. And it is ordered that the proper order issue to the Registrar of Property of San Juan.

"4. That it should adjudge as it does adjudge the defendant, Eleuterio Landrau, to pay the plaintiffs by way of profit or income not received by them, the sum of $600, American gold, within three days after the date on which this judgment becomes final.

"5. That the defendants pay the costs of these proceedings.

"Done in open court this 29th day of May, 1908. And entered this 1st day of June, 1908. (Signed) Emilio del Toro, Judge. Attest: José E. Figueras, Secretary."

Counsel for the defendants, Eleuterio Landrau and Paula Cruz Arroyo, took an appeal from said judgment which is now pending the decision of this Supreme Court, after the parties had filed their briefs and made their respective oral arguments in support of their claims.

Counsel for the defendants and appellants alleges the following grounds in support of the appeal:

1. An error of law in the judgment in admitting the complaint for the recovery, without the plaintiff's having identified the real property sought to be recovered.

2. An error of law, owing to the nonapplication of section 1376, which governs the double sale of real property because on the assumption that the estate had been identified there would be two sales thereof, one by Manuel Díaz to Angel Oquendo and the other by Eduardo Laborda to Eleuterio Landrau, in whom the ownership vested because he had recorded it first in the registry.

3. An error of law owing to the nonapplication of article 1957 of the former Civil Code, which is literally the same as section 1858 of the Revised Code, in relation with the amendment made by the judicial order of April 4, 1899, on account of Eleuterio Landrau and Paula Cruz having acquired the ownership of the estate by prescription, in case its identity had been established.

4. Violation of the provisions of article 389 of the Mortgage Law and the concordant articles of the Regulations for its execution, on account of the admission at the trial in evidence, to the prejudice of third persons, of the deeds of sale by Eugenio Carrillo and others to Manuel Díaz and by Manuel Díaz to Angel Oquendo, of March 18, 1850, and February 7, 1868, without having been recorded in the registry.

5. Violation of sections 1184 and 1186 of the Civil Code, in relation with section 45 of the act to regulate the introduction of evidence, as the court did not consider the scope and value of the proceedings to establish possession of the estate of 60 *cuerdas* which the defendants introduced as evidence.

6. Violation of sections 108 and 162 of the act to regulate the introduction of evidence, in relation with article 1214 of the former Civil Code, which is equivalent of section 1182 of the Code in force, inasmuch as the plaintiffs having failed to prove, in any form whatsoever, the amount of the products produced by the estate claimed, the court granted them in this connection the sum of $600, thus also violating the provisions of section 1323 of the Civil Code, because if such liability existed, it would not be demandable only of Eleuterio Landrau, but of the marriage community.

7. Violations of sections 666 and 666*b* of the Civil Code, in relation with section 19 of the act relating to special proceedings, because it was assumed that Aurelio and Felícita Morales Oquendo are the heirs of Dolores or Loreta and Petrona of the same surnames, without the legal formalities having been complied with.

8. Violation of sections 1184 and 1186 of the Civil Code in relation with section 45 of the act to regulate the introduction of evidence, in not considering the scope and probatory value of the certificate issued by the secretary of the municipality of Río Piedras on March 17, 1908, which certificate shows that neither the plaintiffs nor their predecessor in interest were the owners of any estates whatsoever in said town, because they have not been taxpayers therein for 28 years back.

Let us examine the grounds on which the appeal is based.

It has been established in the action that by public deed executed on February 7, 1868, Angel Oquendo acquired of Manuel Díaz, an estate of 25 *cuerdas* of land more or less

situated in the *barrio* of Los Frailes in the jurisdiction of Guainabo, having the metes and bounds described in said document, for the price of 600 *escudos*, of which the purchaser paid 400, retaining in his possession the remaining 200, to apply under annuity and tribute in favor of the *ayuntamiento* of this capital, Manuel Diez having acquired the estate in his turn under public deed of purchase and sale executed in his favor on March 18, 1850, of María Juliana Crispina, Manuel Regina, Juana de la Cruz, Juan Silverio and Eugenio Carrillo, and it had been subject since 1811, when the successor in interest acquired it from the vendors, to the sum of $100, belonging to the *propios y rentas* of this city, according to a certificate issued by the general recorder of mortgages on September 25 of the year last cited.

As will be observed, Angel Oquendo has been the owner of the estate since February 7, 1868, subject to the charge mentioned, and no evidence has been presented to show that Oquendo transferred the ownership thereof under any legal title.

It matters little that Landrau and Nicomedes Almestica testified that they did not know of Angel Oquendo having any property and that he had lived as an employe on an estate belonging to Manuel Diez. It matters little that Angel Oquendo and his estate have not appeared in the assessments of the territorial tax since the fiscal year of 1880-1881. The said public deed of February 7, 1868, proclaims that on said date, Oquendo acquired of Manuel Diez, a rural estate having an area of 25 *cuerdas*, and said estate will belong to him and to his successors in interest until it shall be shown that it has passed to other hands under a legitimate title of acquisition.

That said estate is the same that is now sought to be recovered by the plaintiffs and that it is included within another estate having an area of 60 *cuerdas*, situated in the *barrios* of Monacillos and Frailes in the municipal district of Río Piedras, with relation to which Eleuterio Landrau instituted pro-

ceedings to establish possession in the municipal court of said town, which were approved on March 26, 1894, *without prejudice to third persons having a better right,* and recorded in the Registry of Property of San Juan on September 17 of said year 1894, is shown in the record by the findings on the evidence of the inferior court in the exercise of its duties, which findings are supported by the testimony of witnesses Camilio González, who surveyed and measured the estate, by order of the court, Domingo Ramos, at present an adjoining owner, Felícita Morales, Demetrio Santa, Aurelio Morales, and Lorenzo Torres, and they are corroborated by the testimony of the defendant himself, Eleuterio Landrau, who acknowledges that he paid an annuity which they told him encumbered the estate of 60 *cuerdas* purchased of Eduardo Laborda, who had sold it to him free from encumbrances, the antecedents of the annuity not having been gone into, because it being a question of the *ayuntamiento* he thought it better to pay, as he did, to avoid any litigation.

The estate of 60 *cuerdas,* to establish the possession of which Landrau instituted proceedings, a copy of the record of which came to the trial, had been acquired from Eduardo Laborde, according to the statement of the former in his initial petition in the proceedings, and Laborde acquiesced in such statement upon being summoned in the proceedings, and Fulgecio Piñero and Francisco Fernández Juncos testified in the same sense in the proceedings, but neither the latter nor Laborde testified in this action, and, therefore, the statement of Laborde not made under oath and the sworn depositions of Piñero and Fernández Juncos cannot prejudice the plaintiffs who were not parties to the proceedings, apart from the fact that said witnesses should have confined their testimony to the fact of Laborde having possessed the estate, in his own name, and to the duration of the possession according to rule three of article 391 of the Mortgage Law. At any rate, it devolved upon the inferior court to weigh these ele-

ments of proof in combination with all the other evidence adduced at the trial.

There are, no doubt, contradictions between the testimony of the witnesses who testified at the trial, but we have already repeatedly said that when the testimony of witnesses is contradictory, it devolves upon the jury, or in its absence upon the trial court, to harmonize such testimony if possible, or otherwise to decide and arrive at the conclusion which it may deem proper, naturally with juridicial discretion and subjection to the rules of evidence, in accordance with the provisions of section 162 of the act relating to the matter.

We do not see that the court has abused its judicial discretion, nor that it infringed any rule of evidence in holding that the identity of the estate involved had been established; it was in a better position than we are to arrive at such conclusion, which, as we have said above, is supported by the evidence adduced at the trial.

This doctrine has heretofore been established by us in the following cases: *José Morales* v. *La Central Machete,* 9 P. R. Rep., 117; *Rafael Valentín Román* v. *The American R. R. Co. of Porto Rico,* 10 P. R. Rep., 52.

Section 1376 of the Civil Code, the second paragraph of which provides that when real property has been sold to different purchasers the ownership shall belong to the one who first recorded it in the registry, has not been violated as alleged by the appellant. In this case Eleuterio Landrau did not record in the registry the ownership of the estate claimed by the plaintiffs, but the possession thereof, and against this possession the plaintiffs allege a better right—that is to say, a title of ownership—for which they are authorized, by article 392 of the Mortgage Law which provides for the approval and record of the proceedings in the registry *without prejudice to third persons having a better right,* and the possessory proceedings instituted by Eleuterio Landrau were so approved and recorded. In support of this doctrine we have the para-

graph before the last of article 394 of the said Mortgage Law which reads as follows:

"Entries of possession shall prejudice or favor third persons from the date of their record, but only with regard to the effects which the laws attribute to mere possession.

"The entry of possession shall not prejudice the person who has a better right to the ownership of the realty, although his title has not been recorded, unless prescription has confirmed and secured the claim recorded. Between the parties the possession shall be effectual from the date prescribed by the common law."

The exception of prescription—we refer to the third ground of the appeal—was properly overruled by the trial court.

We are led to this conclusion by the provisions of the Civil Code applicable to the case contained in the sections which we transcribe herewith:

"Section 1841.—For ordinary prescription of ownership and other property rights it is necessary to possess things in good faith and under a proper title during the time specified by law.

"Section 1842.—Possession must be in the capacity of an owner, public, peaceful and uninterrupted.

"Section 1851.—Good faith in the possessor consists of his belief that the person from whom he received the thing was the owner of the same, and could convey his title.

"Section 1852.—The conditions of good faith required for possession in sections 436 and 437 of Chapter I, Title V, and in section 544 of article first, Chapter I, Title VII, of the second book of this Code, are equally necessary for the determination of said requisite in the prescription of ownership and of other property rights.

"Section 1853.—By a proper title is understood that which legally suffices to transfer the ownership or property right, the prescription of which is in question.

"Section 1854.—The title for prescription must be true and valid.

"Section 1855.—A proper title must be proven; it never can be presumed.

"Section 1858.—Ownership and other property rights in real property shall prescribe by possession for 10 years as to persons present,

and for 20 years with regard to those absent, with good faith and with a proper title.

"Section 1860.—Ownership and other property rights in real property shall also prescribe by uninterrupted possession of the same for 30 years without the necessity of title or good faith, and without distinction between present and absent persons, with the exception mentioned in section 546 of the second article, Chapter I, Title VII, of the second book of this Code."

Domingo Ramos, Felícita Morales, Demetrio Santa, Aurelio Morales and Lorenzo Torres, witnesses for the plaintiffs, testified as to the possession of the estate of 25 *cuerdas*. Domingo Ramos says that Eleuterio Landrau possessed the estate after the death of Angel Oquendo, who had possessed it previously, and that he did not know whether Landrau purchased, leased or how he acquired the said estate, although he had heard it said that he had leased it, he does not know from whom. Felícita Morales testified that when her grandfather, Angel Oquendo died, she and the others living on the estate had to leave it, because Eleuterio Landrau told them that he had leased it from their grandfather, and since that time Landrau alone had remained in possession thereof; that she did not know what he paid, nor whether he ever did pay or not. Demetrio Santa testified that after the death of Angel Oquendo, 16 or 17 years ago, his entire family left the estate, and that he afterwards saw Eleuterio Landrau in possession thereof, that he did not know under what title, and that he had never seen Eduardo in possession thereof. Aurelio Morales stated that upon the death of his grandfather, Angel Oquendo, 16 or 17 years ago, the mother of the witness wished to remain on the estate, but Landrau opposed it, stating that he had no business or contracts with her, but only with Oquendo, of whom he had leased the estate for some time, it being then that Landrau remained on the estate and his mother abandoned it, without Landrau having shown any contract or lease whatever, nor made any payments in such connection. Lorenzo Torres testified that upon the death of Angel Oquen-

do, Eleuterio Landrau remained on the estate, although he did not know under what title, and that he is not acquainted with Eduardo Laborde, who has not possessed the estate in question.

The inferior court, considering the merits of the proceedings to establish possession instituted at the instance of Eleuterio Landrau, in combination with the evidence adduced at the trial, arrived at the conclusion that Eleuterio Landrau had been possessing the estate claimed in bad faith and without a proper title. We will not go against such finding, because Landrau has not proved that he held possession under a proper title, as it devolved upon him to do, and his bad faith is shown by the absence of such title and the testimony of which we have given an extract. A real or simulated title of lease does not transfer ownership, nor is the possession derived therefrom in the capacity of an owner. The proceedings to establish possession instituted at the instance of Laborde, as their title indicates, do not constitute a title of ownership but merely of possession, which will become converted into a title of ownership by the lapse of time which the law fixes for prescription.

The time for the prescription in this case, in view of the attendant circumstances, must be 30 years; and this time, counted from the date of the record of the proceedings to establish possession of the date the complaint was filed, has not elapsed, for which reason the prescription does not lie.

The fourth ground of the appeal does not lie because the public deeds of sale submitted to the action by the plaintiffs, although not recorded in the registry, are comprised in the exception contained in the last paragraph of article 289 of the Mortgage Law. Such deeds were presented for the purpose of obtaining the annulment and cancellation of the record of the possession of the estate which the plaintiffs claim, and, consequently, they were properly admitted.

Nor have sections 1184 and 1186 of the Civil Code, in relation with section 45 of the act regulating the introduction of evidence been violated, as alleged by the appellant in the fifth and eighth grounds for the appeal, because the inferior judge did not deny the character of public documents to the possessory proceedings instituted by Eleuterio Landrau which comprise the land claimed, nor to the certificate issued by the secretary of the municipality of Río Piedras on March 17, 1908, to the effect that neither Angel Oquendo, nor his estate, had appeared on the territorial tax assessment lists of said town since the fiscal year of 1880-1881, when the preparation of such assessments was under the charge of the municipalities; and the probatory value of said documents is not incompatible with the judgment, as they only prove the fact of the possession by Landrau of the estate of 60 *cuerdas* to which the proceedings relate, and the other fact that neither Angel Oquendo, nor his estate, appeared on the tax assessment lists of Río Piedras during the time indicated. The possession of the 25 *cuerdas* of land on the part of Landrau does not exclude the ownership thereof on the part of the plaintiffs; and the certificate in reference does not establish the ownership on the part of Landrau, nor does it annul or destroy, in itself, the title of ownership of the plaintiffs.

With regard to the seventh ground of the appeal we must state:

1. That the District Court of San Juan, by order of January 23, 1907, in proceedings instituted by Aurelio and Felícita Morales Oquendo, declared the intestate heirs of Angel Oquendo y Salvachia to be his daughter, Justa Oquendo, known as Belén, in her own right, and Felícita, Aurelio, Petrona and Dolores or Loreta Morales Oquendo, in representation of Juan Oquendo, which order was introduced without any objection on the part of the defendants.

2. That, at the instance of the plaintiffs, two certificates of death were admitted as evidence, issued by the person in

charge of the civil registry, showing that Petrona and Dolores Morales Oquendo, both of them unmarried, and daughters of Juana Oquendo, had died, respectively, on December 30, 1903, and May 31, 1906.

3. That counsel for the defendant, Landrau, without making any objection to the admission of the declaration of heirs of Angel Oquendo, objected to the admission of the two certificates of death of Petrona and Dolores Morales Oquendo, on the ground that in order to establish the capacity of an heir, it was necessary to present the declaration of the heirs of the deceased, Petrona and Dolores.

We are of the opinion that the admission of both documents was a necessary consequence of the admission of the order of the declaration of heirs of Angel Oquendo, because the plaintiffs being only Justa Belén and Aurelio and Felícita Morales Oquendo, the first in her own right as the daughter of Angel Oquendo, and the other two as the grandchildren of Angel Oquendo, in representation of their mother, Juana Oquendo, it could not have been explained without said documents how Petrona and Dolores Morales Oquendo being the heirs of Angel Oquendo by right of representation, according to the order of the declaration of heirs of Angel Oquendo y Salvachia, they did not also appear and claim their share in the estate of Angel Oquendo.

The two certificates of death explain why Petrona and Dolores did not appear in the action, the fact of their death being the reason therefor, and the order of the declaration of heirs of January 23, 1907, subsequent to the date of their death, shows us that on said date there were no other heirs of Angel Oquendo by right of representation than his grandchildren, Aurelio and Felícita, who, in union with Justa Belén Oquendo are those to be affected by the declaration of heirs.

Furthermore, if in accordance with the provisions of section 665 of the Civil Code, the rights to the succession of a person are transmitted from the moment of his death, and

according to section 669 of the said Code, the heirs succeed the deceased in all his rights and obligations by the mere fact of his death, it is logical to deduce that for the establishment of the right of succession alleged in the complaint with relation to Petrona and Dolores Morales Oquendo, the certificates of their deaths could be presented at the trial.

The plaintiffs, having based their action among other facts on their capacity of heirs of Angel Oquendo, without such fact having been admitted by the defendants, they had the right to establish such capacity in this action without the necessity of having recourse therefor to the act relating to special proceedings, although such proof can only be valid and efficient with relation to the defendants in the specific case under consideration, because for general purposes, or when it is sought to obtain a declaration of heirs, which has not been applied for in this action, the provisions of chapter three, of title one, of the act relating to special proceedings, which establish the mode and form of obtaining such declaration, would have to be observed.

Finally, upon examining the sixth ground of the appeal, we must acknowledge in principle that the plaintiffs are entitled to the fruits produced by the estate during the time which the defendants withheld it in bad faith; but we do not find in the action any basis on which to determine the amount and value of such products, nor does the complaint establish any basis, the proof of which would permit us to regulate them.

The plaintiffs affirm only that they estimated at $2,000 the loss and damages caused in the estate, and at $7,246, the income, with interest, which they have failed to receive during the 17 years that the defendants held it. The witnesses examined on this point were Domingo Ramos, Demetrio Santa, Lorenzo Torres and Aurelio Morales, of whom the first named stated that he could not determine what the estate might produce, and that he cannot even approximate it, because sometimes lands rise in price and at other times fall; the third,

that he does not know how much the estate would bring if leased; and the fourth, that he does not know what Landrau paid monthly for the estate and, that if well cultivated, he did not know what it could be worth.

With such deficient evidence, and taking as a basis the price for which Angel Oquendo acquired the estate, deducting therefrom the charge encumbering it, and considering, further-more, the value at which it was awarded to Paula Cruz in the deed of liquidation of the ganancial property, we cannot arrive at the conclusion that the plaintiffs are entitled to receive the sum of $600 which Landrau has been adjudged to pay.

The party holding the affirmative of the issue must produce the evidence to prove it, according to section 108 of the act regulating the introduction of evidence.

The plaintiffs have not established the amount of the products of the estate, which is a necessary requisite for the indemnity claimed and, therefore, it cannot be granted them.

For the reasons stated, we believe that the judgment appealed from should be affirmed, except in so far as it adjudges Eleuterio Landrau to pay the plaintiffs the sum of $600, American gold, as profit or income which they have failed to receive.

*Affirmed.*

Justices MacLeary and Wolf concurred.

Justices Figueras and del Toro did not take part in the decision of this case.